UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18-cv-68-FDW
(5:04-cr-66-FDW-CH-1)

| | |
|---|---|
| MICHAEL GRAYLEN WHEELER, | ) |
| Petitioner, | ) |
| vs. | ) ORDER |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I. BACKGROUND

In 2006, Petitioner Michael Graylen Wheeler pleaded guilty to possessing cocaine with the intent to distribute and carrying a firearm during and in relation to a drug-trafficking crime. (Crim. Case No. 5:04-cr-66, Doc. No. 33: Judgment). This Court sentenced Petitioner to 152 months of imprisonment, to be followed by five years of supervised release. (Id.). The Fourth Circuit affirmed. United States v. Wheeler, 286 F. App'x 3 (4th Cir. 2008).

This Court subsequently reduced Petitioner's sentence on the drug count from 92 months to 77 months pursuant to the crack cocaine amendments. (Crim. Case No. 5:04-cr-66, Doc. No. 57). He also filed an unsuccessful motion to reduce his sentence, as well as an unsuccessful motion to vacate. (Id., Doc. Nos. 63, 66, 69, 72-73).

Petitioner began his supervised release on May 12, 2015. (Id., Doc. No. 75 at 1). A month later, he tested positive for marijuana use. (Id.). Petitioner agreed to the modification of his supervised release terms, including participation in the DROPS Program. (Id., Doc. No. 75-

1

1). Four months later, on October 15, 2015, Petitioner's probation officer, Patrick Bradshaw, recommended that Petitioner's supervised release be revoked, alleging that he committed the following violations: (1) a new violation of law for cocaine trafficking, including possession of 28.6 grams of cocaine; (2) a new violation of law for conspiring to traffic cocaine; (3) a new violation of law for the manufacture, sale, delivery, or possession of a controlled substance within 1,000 feet of a school; (4) associating with a convicted felon; (5) using illegal narcotics; (6) testing positive for marijuana; and (7) failing to comply with the drug treatment requirements of his supervised release. (Id., Doc. No. 76). Based on the revocation petition, this Court issued a warrant for Petitioner's arrest. (Id., Doc. No. 76-1). At Petitioner's initial appearance, he was advised of his rights and the charges. (Id., Doc. Entry dated Nov. 12, 2015).

At a preliminary revocation hearing before the Honorable David C. Keesler, United States Magistrate Judge, on November 17, 2015, Petitioner conceded that there was probable cause to support violations six and seven, but he sought a preliminary hearing as to violations one through five. (Id., Doc. No. 96 at 3: Revoc. Tr.). The probation officer testified that the first four violations related to Petitioner's sale of drugs to an undercover officer. (Id. at 7). When Petitioner was arrested after the sale, he had 28 grams of cocaine, and he was with another convicted felon. (Id. at 7-8). Judge Keesler found that the Government had established probable cause to support the violations and to detain Petitioner. (Id. at 21-22, 30).

The final revocation hearing was held on May 2, 2016, before the Honorable Richard L. Voorhees. At the hearing, Petitioner stated that he had received a copy of the violation report, had reviewed and discussed the report with his attorney, and understood it. (Id., Doc. No. 97 at 4). The Court advised Petitioner of each of the alleged violations, and he denied each allegation and requested a hearing. (Id. at 4-7).

Jamie Jackson, an undercover narcotics investigator, testified that Petitioner sold him crack cocaine in early October and an ounce of powder cocaine on October 13, 2015. (Id. at 10-11). Petitioner entered Jackson's car, took $1,400 in cash, and handed Jackson an ounce of powder cocaine. (Id. at 15-16, 40-43). Once the money was exchanged, Petitioner was arrested. (Id. at 38). The transaction took place within 1,000 feet of Catawba County Community College and was captured on video, which was played for the Court. (Id. at 18-22). Text messages between Jackson and Petitioner setting up the October 13 drug transaction were admitted into evidence. (Id. at 12-15). Matthew Farra, a task force officer with the Catawba County Sheriff's Office and the lead investigator on the case, identified the driver of the vehicle that brought Petitioner to the cocaine transaction as William Brawley. (Id. at 34-35, 45-46). The Government then submitted two judgments showing Brawley's prior felony convictions. (Id. at 46).

Jenny Leiser, a drug lab manager for the U.S. Probation Office, testified that she analyzed Petitioner's August 4, 2015, urine sample, which tested positive for the presence of cannabinoids (marijuana). (Id. at 50-54). According to Petitioner's probation officer, following Petitioner's second failed drug test, Petitioner admitted to him that he had in fact used marijuana during that time period. (Id. at 69, 73). Petitioner also admitted to using marijuana since the age of 12, and to using marijuana while in prison and in a halfway house. (Id.). Paul Rauscher, a substance abuse counselor, testified that Petitioner missed his counseling sessions in July and August and that he dismissed Petitioner from the treatment program in October 2015. (Id. at 61-64).

This Court held that the Government had proven the seven violations by a preponderance of the evidence, revoked Petitioner's supervised release, and sentenced Petitioner to 60 months of imprisonment. (Id. at 84-86, 97-99). Petitioner challenged the revocation of supervised

3

release on direct appeal. United States v. Wheeler, 682 F. App'x 229 (4th Cir. 2017). Petitioner's counsel filed an Anders brief, but questioned whether this Court abused its discretion by finding adequate evidence that Petitioner trafficked cocaine. (Id. at 230). Petitioner filed a pro se supplemental brief, arguing that his 60-month sentence was unreasonable. (Id.).

The Fourth Circuit affirmed, holding that this Court did not clearly err in finding that the substance that Petitioner sold was cocaine, that the Government established by a preponderance of the evidence that Petitioner had engaged in new criminal conduct, and that this Court properly revoked Petitioner's supervised release. (Id.). The Fourth Circuit also held that Petitioner's sentence was procedurally and substantively reasonable. (Id.). Petitioner timely filed the present motion to vacate on April 18, 2018, arguing that he was improperly sentenced and that he received ineffective assistance of counsel in connection with the revocation of his supervised release. (Doc. No. 1 at 13). The Government filed its response on June 25, 2018. (Doc. No. 4).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

**A. Petitioner's Claim that the Evidence Was Insufficient to Support the New Law Violations Based on His Having Engaged in Selling Cocaine.**

Petitioner first contends that the evidence was insufficient to support the new law violations based on his having engaged in selling cocaine. (Id. at 19-20). He contends that this Court erred in finding that he participated in the drug transactions because the related state charges were dismissed. (Id.). On appeal to the Fourth Circuit, Petitioner contested whether "the Government had adequately demonstrated that Petitioner trafficked cocaine." Wheeler, 682 F. App'x at 229-30. Because the Fourth Circuit rejected this argument, Petitioner may not re-litigate this claim in a collateral attack. See United States v. Dyess, 730 F.3d 354, 360-61 (4th Cir. 2013) (holding that Section 2255 petitioners are barred from raising issues already decided on direct appeal), cert. denied, 135 S. Ct. 47 (2014); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding a petitioner may not re-litigate claims decided on direct appeal "under the guise of [a] collateral attack").

Even if Petitioner could raise this claim, it is without merit. In finding a violation for committing a new violation of law, the Sentencing Guidelines do not require that a defendant be convicted. See U.S.S.G. § 7B1.1, p.s., cmt. n.1 (stating that a "violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state or local prosecution for such conduct"). The standard for finding a violation of supervised release is a preponderance of the evidence, which is a lower standard than the beyond a reasonable doubt standard necessary to support a criminal conviction. Accordingly, Petitioner's contention that the Court erred in finding that he violated the conditions of his supervised release by committing a new violation of law, even though the state charges were dismissed, is without merit. Cf. Villarreal v. U.S. Parole Comm'n, 985 F.2d 835, 839 (5th Cir. 1993) (holding it was appropriate for Parole Commission to consider dismissed state charges); Mullen v. U.S. Parole Comm'n, 756 F.2d 74, 75 (8th Cir. 1985) (holding that the Parole Commission's finding that defendant

5

violated the conditions of his supervised release "is unaffected by the dismissal of the state charge arising out of the same conduct"). Finally, Petitioner's assertion that Nelson v. Colorado, 137 S. Ct. 1249 (2017), requires the dismissal of the violations based on the new offenses is misplaced. Nelson involved the burden of proof for a claim for restitution based on a conviction that was invalidated. It has no bearing on the revocation of Petitioner's supervised release. Accordingly, Petitioner's first claim is denied.

**B. Petitioner's Claim of Ineffective Assistance of Counsel.**

Petitioner next argues that he received ineffective assistance of counsel during his revocation proceeding because counsel did not object to the lack of written notice of the alleged violations of supervised release. (Doc. No. 1 at 16). The Supreme Court has recognized that revocation proceedings are not part of a criminal prosecution and, therefore, do not afford a defendant "the full panoply of rights." Morrisey v. Brewster, 408 U.S. 471, 480 (1972) (addressing parole violations). This stems from the fact that "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observation of special parole restrictions." Id. The Fourth Circuit has held "that the conditional liberty to which those under supervised release are subject entails the surrender of certain constitutional rights, including any right to have the alleged supervised release violation proved to a jury beyond a reasonable doubt." United States v. Ward, 770 F.3d 1090, 1099 (4th Cir. 2014).

Other courts have recognized that "there is no constitutional right to counsel in a probation violation hearing." United States v. Allgood, 48 F. Supp. 2d 554, 559-60 (E.D. Va. 1999) (denying Section 2255 claim based on alleged ineffective assistance of counsel during supervised release revocation proceedings because it was not constitutionally based); Wright v.

6

United States, 2014 WL 4105696 (E.D.N.C. Aug. 19, 2014) (same). The right to counsel during revocation proceedings is statutory in nature. See 18 U.S.C. § 3006A(a)(1)(C) & (E); United States v. Soto-Olivas, 44 F.3d 788, 792 (9th Cir. 1995) (stating that "in proceedings to revoke supervised release . . . there is no constitutionally guaranteed right to the assistance of counsel"). The Supreme Court has determined that participation by counsel would be "both undesirable and constitutionally unnecessary in most revocation hearings." Gagnon v. Scarpelli, 411 U.S. 778, 787-91 (1973) (recognizing that only under limited circumstances, such as where there is complex documentary evidence, does due process require the appointment of counsel during such proceedings).

Here, the questions to be decided during the revocation hearing related to whether Petitioner had engaged in a drug deal, associated with a felon, used drugs, and failed to participate in a drug treatment program. Because these were fact-based issues and did not involve complex scenarios, Petitioner's Sixth Amendment claim of ineffective assistance of counsel fails because he has not shown that he had a constitutional right to counsel during his revocation proceedings. See Allgood, 48 F. Supp. 2d at 559-60; Wright, 2014 WL 4105696. Without a constitutional right to counsel, he cannot show that he was unconstitutionally deprived of the right to effective assistance of counsel.

Even if Petitioner could establish that he had a constitutional right to counsel during his revocation proceeding, his claim of ineffective assistance is baseless. To prevail on a Section 2255 claim of ineffective assistance of counsel, a petitioner has the burden of establishing both (1) that defense counsel's performance was deficient, in that counsel's "representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms," and (2) that this deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S.

668, 687-88, 694 (1984). To establish prejudice, the petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. If a petitioner fails to meet the burden under either prong, the claim of ineffective assistance fails. Strickland, 466 U.S. at 697.

Petitioner contends that his attorney provided ineffective assistance during the revocation proceedings by failing to object to revocation on the basis that Petitioner did not receive written notice before the revocation hearing. (Doc. No. 1 at 19; FED. R. CRIM. P. 32.1(b)(2)(A)). The record establishes that Petitioner's claim is baseless. At the revocation hearing, Petitioner told this Court that he had received a copy of the violation report and had reviewed and discussed it with his attorney. (Crim. Case No. 5:04-cr-66, Doc. No. 96 at 4). Petitioner's statements in court make clear that he was aware of the asserted violations, he had received a written copy detailing all asserted violations, and he had discussed the charges in detail with his attorney. Accordingly, Petitioner cannot show that counsel was deficient or that he was prejudiced by the failure to raise a frivolous claim.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a

certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: July 8, 2018

Frank D. Whitney
Chief United States District Judge